# April Term, 1908.

[No. 5697.]

Slater v. The Fire and Police Board of The City and County of Denver et al.

1. City and County of Denver—Intoxicating Liquors—Licenses—
Petition—How Addressed.

The fact that a petition for a liquor license was directed to the city council of the city and county of Denver, instead of to the fire and police board, is immaterial in determining the validity of the board, where the board considers the petition as though properly directed.—P. 229.

2. Cities and Towns — Statutory Construction — Words and
Phrases.

Words employed in a legislative provision, which have a well recognized and generally understood meaning, mean what is generally so understood and recognized, unless the contrary appears from the provision itself; and the word "block," as used in connection with the subdivision of a city, means a square or portion of the city inclosed by streets.—P. 230.

3. Same—City and County of Denver—Intoxicating Liquors—License—Consent of Property Owners.

A tract of land bounded by the streets immediately surrounding it is a "block" within the meaning of Denver City Charter, § 75, providing that no license for the sale of intoxicating liquors shall be granted "except on petition of the owners of a majority of the real estate within the frontage of the block in which such liquors or any thereof are to be sold," and this although such tract is made up of two platted subdivisions, and one-half of the tract is designated as a block in one of the subdivisions.—P. 231.

4. Same.

To warrant the granting of a license to sell intoxicating liquors under Denver City Charter, § 75, providing that no license for the sale of intoxicating liquors shall be granted "except on the petition of the owners of a majority of the real estate within the frontage of the block in which such liquors or any thereof

(225)

are to be sold," the petition therefor must be signed by the owners of a majority of the frontage of the block on all the streets inclosing it.—P. 232.

*Error to the District Court of the City and County of Denver.*

*Hon. B. M. Malone, Judge.*

*Certiorari* by William C. Slater to the fire and police board of the city and county of Denver, Frank Adams, Earl Hewitt and D. A. Barton, to review the grant of a liquor license to William Coors. From a judgment of the district court sustaining the license, petitioner brings error.

*Reversed and remanded.*

Mr. JOHN HIPP, for plaintiff in error.

Mr. EZRA KEELER, for defendants in error.

William Coors applied to the fire and police board of the city and county of Denver for a license to sell intoxicating liquors at No. 3787 Downing avenue. This number embraced Lot 60, in Block 25, Riverside Addition. The following plat will aid in understanding the questions we are called upon to determine:

38TH STREET

| | | |
|---|---|---|
| 1 | | 64 |
| 2 | | 63 |
| 3 | | 62 |
| 4 | | 61 |
| 5 | | 60 |
| 6 | | 59 |
| 7 | | 58 |
| 8 | | 57 |
| 9 | | 56 |
| 10 | | 55 |
| 11 | | 54 |
| 12 | | 53 |
| 13 | | 52 |
| 14 | | 51 |
| 15 | | 50 |
| 16 | | 49 |
| 1 | | 32 |
| 2 | | 31 |
| 3 | | 30 |
| 4 | | 29 |
| 5 | | 28 |
| 6 | | 27 |
| 7 | | 26 |
| 8 | | 25 |
| 9 | | 24 |
| 10 | | 23 |
| 11 | | 22 |
| 12 | | 21 |
| 13 | | 20 |
| 14 | | 19 |
| 15 | | 18 |
| 16 | | 17 |

BLAKE STREET

BLOCK 25, RIVERSIDE ADDITION

BALDWIN'S ADDITION

DOWNING AVENUE

EAST WALNUT STREET

36TH STREET

Block 25 consists of thirty-two lots, each of the width of twenty-five feet. Immediately adjoining it on the southwest is a plat of ground known as Baldwin's Addition, which, also, consists of thirty-two lots, each twenty-five feet in width. The ground embraced in the two plats is bounded on the northeast by Thirty-eighth street, on the southwest by Thirty-sixth street, on the northwest by Blake street, and on the southeast by East Walnut street and Downing avenue.

The application of Coors was accompanied by a petition praying for the issuance of the license by the owners of lots facing on East Walnut street and Downing avenue as follows: Those owning Lots 49, 51, 52, 58, 59 and 60 in Block 25; and the owners of Lots 17, 18, 19, 23, 24, 26, 27, 28, 29, 30 and 32, in Baldwin's Addition; in all, the owners of seventeen lots.

William C. Slater, the owner of Lots 61 to 64, both inclusive, in Block 25, Riverside Addition, protested against the granting of the license upon the grounds (1) that the application for the license was addressed to the city council of the city and county of Denver, and not to the fire and police board; (2) that the owners of a majority of the lots in Block 25, fronting on Downing avenue, had not petitioned for the license to be granted; and (3) that the owners of a majority of the lots in the tract bounded by the streets as exhibited on the plat had not petitioned for such license.

Section 75 of the charter of the city and county of Denver provides: ''No license for the sale of spirituous, malt, or intoxicating liquors in liquor saloons, dram shops, or tippling houses shall be granted, except on the petition of the owners of a majority of the real estate within the frontage of the

block in which such liquors or any thereof are to be sold."

Slater's protest was overruled and the license granted. Thereafter Slater petitioned the fire and police board to revoke the license upon practically the same grounds stated in his protest. This petition was, also, denied. Following this action of the board, Slater commenced proceedings in *certiorari*, in the district court, to review the action of the board in the premises. In his petition therefor he set out substantially the same facts alleged in his protest against granting the license, and his petition to the board to revoke it, the action of the board in overruling his protest and denying his petition, and prayed for judgment directing the board to annul the license issued to Coors. The writ issued, to which the board made a return of the record of its proceedings relative to the license from which it appears that the owners of the lots as above designated, and no others, in that part of the block or tract fronting on East Walnut street and Downing avenue, had petitioned for the license granted to Coors. Upon this return the petitioner moved for judgment on the pleadings, which was denied. Thereupon he interposed a general demurrer to the return, which demurrer was overruled. Having elected to stand by his demurrer, his petition or complaint was dismissed, and judgment entered in favor of the board dismissing the action. He brings the case here for review on error.

Mr. JUSTICE GABBERT delivered the opinion of the court:

The only body authorized to issue licenses for the sale of intoxicating liquors within the city and county of Denver is the fire and police board of that municipality; but, because the application for the

license and petition in support thereof was not addressed to that body is not material. It was treated by the fire and police board as an application and petition to it to issue a liquor license, and the fact that it was not addressed to that body is of no moment, and cuts no figure in determining the validity of its action.

Counsel for plaintiff in error contends that where a piece of property is designated by its owner as a block, it is to be so regarded in an application for a liquor license, and the word "block," as used in the charter relating to the issuance of such license, must be so construed; and hence, it is argued that as but six of the owners of lots fronting on Downing avenue petitioned for the issuance of the license, the board was without authority to grant it. There is no merit in this contention. Words employed in a legislative provision, which have a well-recognized and generally understood meaning, mean what is generally so understood and recognized, unless the contrary appears from the provision itself. "Block," as used in connection with the subdivisions of a city, means a square or portion of a city inclosed by streets.—*Town of Fruita v. Williams*, 33 Colo. 157, 5 Cyc. 717; *Harrison v. People*, 195 Ill. 466; Webster.

There are no words in the provision of the charter under consideration which qualify this definition in any respect whatever. We, therefore, conclude that the word "block," in this instance, must be construed to mean and embraces that tract inclosed and bounded by the streets as designated in the plat of Baldwin's Addition, and Block 25 of Riverside Addition. If the contention of counsel for plaintiff in error should prevail, that Block 25, Riverside Addition was to be regarded as a "block" because so designated by the party platting it, then the owner of Lot 60 in that block might replat that lot,

and if he designated it as a "block," it would only be necessary for the owners of the tract thus entitled, to petition for the issuance of a liquor license, although the owners of the lots on either side not separated by either street or alley, objected to the issuance of such license.

The important question presented is, whether or not the provision of the charter means that the owners of a majority of the real estate in a block in which a saloon is to be. maintained, as determined by the frontage of the streets inclosing it, must sign the petition for the issuance of a license for such saloon, or whether frontage, as used in the charter provision, means the frontage of the block on the street where such saloon is located. Counsel for plaintiff in error contend for the first construction, while counsel for defendants in error contend for the latter. To determine which contention is correct, it becomes necessary to construe the provision of the charter under consideration, and in order to have it clearly before us, we again quote its language:

"No license for the sale of spirituous, malt, or intoxicating liquors in liquor saloons, dram shops, or tippling houses, shall be granted, except on the petition of the owners of a majority of the real estate within the frontage of the block in which such liquors, or any thereof, are to be sold."

In construing a legislative enactment, the terms employed are to be given that construction which will enable its true purpose and intent to be carried out. The evident purpose of the charter provision was to give property owners within a given territory a voice in the issuance of a saloon license, and to inhibit the fire and police board from issuing it unless the assent of a certain proportion of such property owners was obtained. The territory in each instance is a block, which, as we have said, is a tract of land

bounded by the streets immediately surrounding it. The provision is not merely for the benefit of those owning property fronting on the street where the saloon is to be located, but is intended to confer a right upon the owners of the property in the block in which it is proposed to establish a saloon by virtue of which such owners can prevent it, or have it, according to their wishes in the matter.

It is not necessary that all the owners of property in the block shall petition for the license, or a mere majority thereof, numerically; but the owners of a majority of the real estate within the frontage of the block in which the saloon is to be located must petition before the board can issue a license therefor. Frontage is the fronting part of a tract of land, and as applied to city property is generally understood to refer to the street frontage with respect to which such property is usually improved and utilized. Frontage, as employed in the charter provision, is not limited to any part or portion of the block, but, on the contrary, it says: "the frontage of *the* block *in which* such liquors are to be sold," and, therefore, refers to, and means, the entire frontage of the block. The block in question has a frontage upon four streets, the linear extent of which is the length of the four lines defining its boundaries. According to the plain and unambiguous language of the charter, it is the owners of a majority of the real estate within this frontage who must petition for the saloon license, for they are the persons who are directly interested, and upon whom it was the intent of the charter provision to confer the authority to exercise the option of whether they would have a saloon in their block or not. To give the provision any other construction, as, for instance, to say that "frontage," as therein employed, means the frontage of that part of the block fronting on the street where the saloon

is to be located, can only be done by reading it in connection with words of limitation which it does not contain, and which, by necessary implication, cannot be read into it. We are, therefore, of the opinion that before the fire and police board can issue a license for a saloon, the owners of a majority of the real estate within the frontage of the entire block in which the saloon is located must petition therefor. A comparison of the plat of the block with the return of the board shows that the law has not been complied with in this respect.

The judgment of the district court is reversed and the cause remanded for further proceedings in harmony with the views expressed in this opinion.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE CAMPBELL concur.